I'm ready to call our first case this afternoon. It's, I'm hoping I say this gentleman's name correctly, Ndungu v. Attorney General. Counsel. How'd I do with the pronunciation? Perfect. May it please the court. Good afternoon. My name is Andrew Mahon. I'm the attorney for the petitioner, Mr. Jackson Ndungu, and I wish to reserve three minutes for rebuttal. I'll start out by informing the court that Mr. Ndungu is a lawful permanent resident of the United States and a native of Kenya. He has twice been convicted for fleeing and eluding under Pennsylvania law, both times by a plea of nolo contendere and both times the offenses were graded as felonies. The first offense for fleeing and eluding occurred in September of 2014, and the second offense occurred in April of 2019. Yeah, we know the facts of your case, Mr. Mahon. Understood. Thank you, Your Honor. I'll go into the issues then. The issues here are just two, whether the immigration judge erred in terms of classifying this fleeing and eluding conviction as a crime involving moral turpitude and whether the principle of claim preclusion bars the government from litigating this issue relating to the classification of fleeing and eluding given the outcome of second removal proceedings that the government had initiated against Mr. Ndungu. There's three removal proceedings here, Your Honor, that are at issue. There's one from 2015, one from 2017, and then a third from 2019. And then in each of those cases, the government has alleged that fleeing and eluding constitutes a crime involving moral turpitude. Does the categorical approach or the modified categorical approach apply here? I would submit the categorical approach applies. That's been my position in my brief. But how can that be if we've already said this is a divisible statute? Well, I'm not, in Ovando, Your Honor, is that the case that you're referring to? And I believe that was an unpublished decision. And my position on Ovando, there's a lot I like about Ovando. I know, you rely on it heavily. I like that part, but I don't like that part. But, and we recognize it's an NPL and we're not bound by it. But we looked at the statute and we said, it's divisible. Why wouldn't we pay attention to that, particularly when the reasoning on that point seems pretty solid, which is there's different penalties attached to different things. And so you don't look at them at means, you look at them as elements. I think that that's a valid point and a legitimate reading of the statute. I just don't happen to think it's the best one. And my opinion on that is coming from the position, well, in Ovando, the parties didn't argue to the same degree that I'm arguing this difference between means and elements. I think the parties in Ovando conceded that the grading factors were elements. So that's the first difference here. I think there was a concession and this point wasn't argued with the same level of vigor, I would say, as it is here in this current case. And my distinction that I would say in means versus elements, well, there's four cases that I'll rely on to say that the grading factors are not elements. The first one is Jean-Louis, a published case from 2009, this court's decision. And Jean-Louis says as much, it specifically says that grading factors are not offense elements per se, because they include strict liability, a mental state of strict liability. So I took Jean-Louis very seriously. But this is maybe a different sort of grading offense because it crosses a big line into the felony space. Usually in these three items, A2, 2, 1, 2, and 3, are separated by disjunctive. And that's really a big, big, big issue for us when we look for divisibility, at least if these are elements. And that's correct, Your Honor. And I think this probably, I'll be frank, is a close call on this divisibility point. But I think there is a point to be made here that the statute's not divisible. But if we disagreed with you, do you lose? I think I still win. I think I still win, but I want to make sure I put every argument forward in this case. But I think I still win. And the reason that I'll say is because, let's say we're in the modified categorical approach. These grading factors, and this has been the government's position, are a unified element. They're under the Mathis standard, the 2016 Supreme Court decision, the Mathis standard. I think we have to look at them as a unified element and not as separate individual elements. So really what they present here is a list of means of violating a unified aggravating circumstances element. So whether it's a DUI, whether it's crossing a state line, or whether it's endangering the public or police with regard to a high-speed chase, I don't think those are elements. And that's been individual. How do you deal with Mathis? Doesn't Mathis say straight up that if statutory alternatives carry different punishments than under Apprendi, they must be elements. That's a quote out of Mathis. Right, but I think, Your Honor, that Mathis also instructs us to look at whether or not there's this distinction between means and elements. And with the grading factors themselves, Your Honor. It does say that, but I'm just quoting to you from the U.S. Supreme Court. Quote, if statutory alternatives carry different punishments than under Apprendi, they must be elements. Close quote. Like, what are we supposed to do with that? You acknowledge, as you must, that there's different punishments associated with these different, as you're putting them, grading elements, or grading factors. And they do, as Judge Phipps has pointed out, even like move you from misdemeanor into felony territory. I'm having a little hard time figuring how we get there. If you cross the state line, it's not necessarily a crime involving endangering someone's life or driving while you're intoxicated. It's so, if you look at it as a modified offense, there is a possibility under the statute of, we're looking at it generally, well, he could have crossed the state line. It's not a crime of moral turpitude. In the second offense, where there's no specification of which element, which factor he satisfied, don't we have to say, under the modified categorical approach, that we can't say it's a crime of moral turpitude, and we can't say that there's a second offense, and therefore, he is not eligible for that to apply? And if you could persuade us to go along with that, why fight us? And I don't want to fight you, but I don't know where the court's going to come down on this issue. I don't know if the court's going to come down on this particular record of conviction that applying the modified categorical approach my client, the government has not met its burden. So I think the reasoning you just applied, Your Honor, I think is exactly right. The exact same reasoning that the court in Ovando applied, and I think applies with equal force to my case. So I think under that application, my client wins. But as we've discussed, because Ovando is not published, I don't know, and because each case is decided on its own record, I'm not sure where the decision and argument will lie here. Let me just take you downstream one step. Let's assume it's divisible, okay? Let's assume that we're under, normally, a modified categorical approach. Then we look to Shepherd Docs to tell us which one of the elements the conviction was under. And so what is your position, if any, on what the Shepherd Docs tell us as to whether it was one, two, or three that the conviction was under? Well, I don't think they do, especially for the 2019 fleeing and eluding conviction. So let me just stop you there, then. If they don't, right, then that's a failure of the Shepherd documents to identify the modified categorical approach. And then even though we took the initial turn to go down the route of modified categorical approach, in the absence of Shepherd Docs specificity, we somehow find ourselves back in full categorical approach space. Is that correct? I think that's right. I think we go through this multi-level review process of categorical, modified categorical, only to really land at the same place. Well, that's if there's no Shepherd document we can look at. And that's the point I'd like to take you to next. Okay, understood. Because your position is that there is no Shepherd document we can look at because the, I guess the criminal complaint you're asserting was replaced by criminal information. Is that correct? That is correct. Okay. I'm looking at page 626 in the appendix. This is, I believe, the criminal information or adjacent to it, right? The criminal information says fleeing and accident is what he pled to. And that would be count one and count four of the information. And your honor, there's two informations for the fleeing and looting. Is it the 2014 conviction or the 2019 conviction? This is 2019, I believe. If 4-18-19 is the date on this, handwritten, this document right next to it, says that in count four, there's an accident involving damage to a vehicle and quote, the defendant struck an occupied vehicle that contained an adult and two children then fled from the scene on foot. Now, I guess I'm a little curious about why there's the assertion that we just don't know. Because this is the same accident he fled from. It's two counts arising from the same event, the April 9th, 2018 event. The fleeing charge that we've been talking about and the accident charge are the same. So why don't we know that he was fleeing an accident where he struck a vehicle that contained an adult and two children and then fled? Why don't we know that based on a Shepard document? Well, I think, Your Honor, I'll just say that the immigration judge found that the record was not conclusive. Yeah, but if the immigration judge looks at it and says, I don't know what's happening, but we can look at it and say, well, we know what's happening. It's right there, it's in print. If the immigration judge is wrong that when he asserts it's inconclusive, are we bound by his error? Well, I think the government, Your Honor, has asked for a remand on that issue for the application of the modified categorical approach in their brief. But I will say, Your Honor, I think that there's factual allegations that are certainly alleged in the information, but the elements of the offense and the information that I've read do not cite which grading factor was at issue, whether this was crossing the state line, driving under the influence, or whether this was endangerment. And we can attempt to infer based on the circumstances of his conviction whether there was which one of those particular grading factors was at play. But I think that the factual allegations don't use the word high-speed chase. Is it an inference? Or can we look at this and say it's not crossing state lines? It says nothing about state lines. It says there's an accident. It says where it happened, East Franklin and Fulton Street in New Holland, Lancaster County, Pennsylvania. That's what it's, that's the charge. But it doesn't say endangerment, Your Honor. I think that's a crucial distinction that there's not- He struck a vehicle with two kids. And we can infer, and that almost certainly, that had to involve danger, but this is an elements-based analysis. Even under the modified categorical approach, we have to look to the elements as they're charged and the elements as the plea was resolved. I'll also say with respect to these factual allegations that the plea in both cases was resolved in a no low contender rate plea. And I think that's important as well here because there was not by virtue of the no low contender rate plea, a specific admission to the factual allegations. I would posit that by virtue of the no low contender rate plea that the respondent did not incorporate into his plea, although there may have been a charge of this, these grading factors or these circumstances that Your Honor is referring to. So I think in the application of the modified categorical approach, that's ultimately, I think, what the immigration judge rested his decision on, that this no low plea is crucially relevant to this analysis because these factual allegations. Do you have any authority for the assertion that a no low plea gets treated differently than any other kind of plea for purposes of the ability to look at Shepard documents and understand what's going on? I don't, Your Honor. I don't know that that issue has been litigated, but I think applying the Pennsylvania rule as a procedure in the nature of no low contender rate pleas, we can make that conclusion, even if it hasn't been litigated or the subject of any decision. But at one level, there's this principle, I think it traces back to a case called the SEC v. Chenery that says we have to evaluate an agency's decision based on the rationale provided by the agency, and we have exceptions to that, but it's hard for us to make an exception to that rule. And so at one level, the question is, can we look at Appendix 626 and say this qualifies an exception, or are we rigidly bound by what the immigration judge did when the immigration judge says, I can't tell? Now, there may be reasons the immigration judge couldn't tell me, say, I don't know it was high speed, or I don't know this or that. And I mean, no Shepard document's ever gonna be spot on, perfect, every little detail. But the real question is, how much weight do we have to give the immigration judge's decision versus how much weight can we look at this appendix ourself anew? Right, well, I would say this issue was not one that was exactly briefed before this court, just in the sense that I think the government, their position was that a remand was appropriate. But I would say that the court does have plenary review. I would recognize that. The court has plenary review, I believe, and owes deference to the decision to the degree that it's reasonable. But I do think the decision is reasonable. I think it's a reasonable decision that the immigration judge made applying the record of conviction, the incomplete record of conviction to the standard that we're considering. So I think that that... We'll give you a moment here to wrap up. We've moved a little bit over. Right, so let me just address the claim preclusion issue as well, Your Honor. That I think it's clear we meet the first element for claim preclusion in this case because the claim preclusion standard, it requires a final decision on the merits and earlier proceedings. We had that in the 2017 proceedings. We've got your briefing on that. Okay. I understand that. All right. It's an issue. Understood, so with that having been said, Your Honor, I'll turn my time over to my friend. Thank you. Okay, we'll have you back on the podium. Thank you. May it please the court. My name is Jonathan Robbins and I'm here on behalf of the Attorney General. Good afternoon to all of you. As Your Honors have just discussed with my colleague, the primary issue in this case is whether petitioner's conviction under Pennsylvania's felony fleeing or eluding statute constitutes a categorical crime involving moral turpitude. That's certainly what I plan to address for the bulk of my argument, but I just wanna very briefly address the two arguments that petitioner's making that he's asserting we shouldn't even reach that fundamental question. The first thing he's arguing is that the government is precluded from getting to this issue because of race judicata. But all you really need to understand in terms of why race judicata doesn't apply is exactly what happened in the prior proceedings. The petitioner was charged with the same charge of removability in those previous proceedings, being convicted of two CIMTs not arising out of the same scheme. Right, we understand that. There was an overlap though, right? There was an overlap with the first conviction, the 2014 felony fleeing or eluding. Does that make a difference? Because you have to have two, right? Right, exactly. And if the court looks at it and says, yeah, these aren't categorically that, and doesn't make any distinction between them, or did the court make a distinction between them? The court didn't, so the- So does our presumption have to be that the court thought those things were not good? And then if that's true, you've got at best one, not two, because one of them was already decided in a previous proceeding, no? In the prior proceeding, the immigration judge didn't make a decision with respect to the felony fleeing or eluding conviction. The immigration judge terminated that case because the simple assault conviction wasn't a CIMT. The immigration judge just assumed that the other one was a CIMT for the sake of argument and said, well, I'm terminating because the assault conviction isn't. So there wasn't a final judgment on the merits with respect to the felony fleeing or eluding charge. And yeah. Let's say we're with you on this. Okay. Why don't you answer the question that comes up in your footnote 14, where you say, well, if the court disagrees that felony fleeing or eluding is categorically a CIMT, it should remand for it to consider whether the offense is divisible. So, given that we said in Rosario-Ondo, this is a divisible statute, we're not bound by it, but assume we thought that reasoning was sound. And we thought, well, wait a second. We might have a Chenery problem here, as Judge Phipps alluded to, because the IJ said, I can't figure out what's going on, but we're looking at it. We think maybe you could figure out what's going on. What's the right outcome here? Should we just send it back or should we handle it ourselves? What should we do? Well, as far as I understand it, the exception to Chenery, or at least one of the exceptions to Chenery, the one that would be implicated here, would be if the results back at the Board would be either an idle or useless formality or a foregone conclusion. So if your honors were to determine that those documents rendered this an idle formality or a foregone conclusion, that's the standard that would meet the exception. The government's gonna- And that's, I guess I'm asking you, do we fit in that category? If we were looking at this and we thought, here is a statement that the accident from which he fled was not something involving crossing state lines, but it was a motor vehicle accident in which he struck a vehicle with an adult and two children and then fled on foot, would it be idle or a foregone conclusion what would happen at the immigration court or not? If you reach that conclusion that the document demonstrably shows that crossing a state line was not one of the aggravating factors to which he could have fled, then it seems to me that it would be an idle or useless formality. But the government does argue for remand in this case. Let me just tease this out on idleness, right? There's three subsections to this, to the grading portion of it. And I think the strongest evidence in the Shepard's document is that it might be a subsection three offense, right? Strongest evidence, it's stronger than it would be intoxication or crossing a state line. So I'm not trying to argue against your position, I'm just trying to grade what the enemies maybe of your position are. But so if we were to evaluate that third prong and say that's not a categorical match, right? Then if we were to apply the categorical approach as opposed to a non-categorical approach, then it wouldn't make any difference because the third one would be part of all three that we would consider. So if we were to just look at number three and say it's not a categorical match, right? Then it can't be a categorical match if it's indivisible either. So isn't this, once we, if we decide that three doesn't work, then we know that it can't be a categorical match for one, two, and three. But we also know that it can't be a categorical match for three. So aren't we at the point of futility exception to Chenery? Just to be clear, when you say the third one, are you referencing the state line one? Are you referencing- No, no, I'm talking the endangered law enforcement officer and member of general public due to driver engaging in a high-speed chase? And you're saying that wouldn't be a categorical match to a crime involving moral turpitude in this hypothetical? If we find that, yeah. And I think that's your burden, not my burden, right? But the point is, if that's not a categorical match, right? I mean, there might be reasons that you could say that would not be, yeah, I mean, this is more the debate, but that not every instance of that offense would be a crime of moral turpitude. If you were to find that, but I guess that sort of brings me to the primary argument in this case. We do think it's a categorical match. And in fact, all three provisions, including the state line one, we think are a categorical match. Now, obviously we understand that there are two unpublished decisions that have not agreed with that position. But the government is of the view that there are flaws in the reasoning of those decisions or points that were overlooked that undermine the persuasiveness of those decisions. So let's talk about why we think that this is a categorical match. Okay, well, when I say categorical, I preface that with the notion that the felony provision, we're looking at the felony provision and not the misdemeanor provision. Those are plainly divisible. Your Honor, I've already pointed that out under Supreme Court law, there are elements because you have to prove beyond a reasonable doubt each one. And speaking only for myself, I'm most interested in subsection three, the endangerer's law enforcement officer or member of the general public. So I'd like to hear why in your view that's a categorical match. Okay, well, the reason is because of the nature of the offense. So when we're comparing the elements of the offense, what we do in determining whether something is a sufficiently turpitude in this crime to meet the level of CIMT, we compare the elements of the offense under the categorical approach to the board's generic definition of a crime involving moral turpitude. So what are the elements of the crime in this case? First, you have to show that the defendant was the driver of a motor vehicle. Second, you have to show that the defendant was given a visual and audible signal by a police officer to bring the vehicle to a stop. Third, you have to show that the defendant either failed to stop or refused to stop or tried to flee or attempted to elude a police officer. And then fourth, you have to show that the defendant did this willingly. In other words, that he or she was aware of the officer's signal to stop and refused to do so. On top of that, because we're in the felony provision, you have to prove beyond a reasonable doubt one of the three aggravating factors, whether it's driving under the influence, crossing a state line, or endangering the public by engaging in a high-speed chase. So now we compare that to the board's generic definition of a crime involving moral turpitude. What does the board require? It requires a culpable mental state and sufficiently reprehensible conduct. So wouldn't there be a way, though, what if someone is driving another person in urgent need of medical care to a hospital? There's an exception in the statute under subsection T for precisely that situation, such that a person would not get a conviction under the statute. There's an exception for good faith concern for personal safety. So that is not going to result in a conviction under the statute. And that's actually one of the things that we think is unpersuasive about the Ovando decision. The court in there gave a hypothetical of minimum conduct that the government is of the view wouldn't produce an actual conviction under the statute because of this exception. Yeah, that may be your view, but it's hard to, I'm not sure how you fit. I mean, the hypothetical was, I just have to get to, what was it, a restroom right across the, I'm right on the, I'm on the Walt Whitman Bridge. I just gotta get across so that there's not an untoward personal embarrassment for me and I'll stop over there. They can talk to me over there. You think that's personal safety? Well, the hypothetical that was given was a multiple. It said, certainly if there's something physical where you think there's a physical issue where you need to get to somewhere, the affirmative defense in the statute allows the judge to consider any factor that he or she deems relevant in assessing whether this exception has been met. And the hypothetical that the court gave was that they were potentially running out of gas. Well, there's a rest stop. You just gotta get to the rest stop. You're out of gas or you got a different kind of full tank. Or you got too much gas. Yeah, exactly. There's something wrong and you just gotta get to that rest stop, whatever it is. Now, it feels like you gotta have a pretty big shoehorn to make that say, well, that's public safety or that's personal safety and therefore you would never be convicted under those circumstances. One of the things that can be considered in this defense is did the person pull over at the next reasonable place to pull over? So in that situation- And this is not that circumstance. That's why it's a pretty good hypothetical. You could pull over in lots of different places but they're not a rest stop and you've gotta get to the rest stop. So you're going to the rest stop. Well, doing that, okay. Well, the problem is, is doing that, you have to have certain elements that also have to be met in conjunction with that. You have to willfully have known that the officer has indicated to bring the vehicle- And we give you all that, right? I mean, it feels a little bit like you're posing the hypothetical and then fighting against it, Mr. Robbins. I think there was a reason why your position has been rejected before, which is it's not difficult to imagine a circumstance where a reasonable person thinks, they're behind me and they'll stay behind me, but I gotta get to that point and I gotta get to that point pretty quick. Now, there's also a reason why the categorical approach is in and of itself a kind of a maddening exercise because here we are talking about getting to a rest stop on time. One of guys' immigration status is on the line. This is angels dancing on the head of a pin or outside of the New Jersey rest stop, right? It's a frustrating thing to have to do, but we have to do it, so we're doing it. And in the past, we've rejected this position. So instead of pushing on the whole crossing state line things, why don't you get to this number three, categorical, you know, endangering a law enforcement officer or a member of the general public due to a driver engaging in a high-speed chase? Because Judge Phipps would be interested in that. I would certainly be interested in that. Don't wanna speak for Judge Roth, but why don't you tell us whether that's a categorical match or not? Well, we certainly think that it is. And all of the cases that we've cited to that have similar types of statute really sort of line up with that sort of third category. So one of the things that the board relied on in this case was the Supreme Court's decision in Sykes. And another decision that really relies a lot on Sykes, and I admit that these cases have been overturned for other reasons. But one of the things that those two cases talked about was the nature of the inherent problem, the inherent danger associated with vehicular flight crimes. And so I think of all the out-of-circuit cases, I mean, obviously, these are all different state statutes. But the state statute that's probably the closest is the one that was analyzed in the Fourth Circuit's decision in Granados. Because there, the minimum conduct, I think, was interfering with a police officer, which even there, the Supreme Court, excuse me, the Fourth Circuit specifically said that that was a categorical match to a crime involving moral turpitude. And really, when we're assessing whether the level of conduct is sufficiently reprehensible, we're looking at two things. We're sort of looking at what inheres in the crime itself, and that's why the Supreme Court's decision is so apt on this point. Because in Sykes, the Supreme Court gave a lot of discussion about what inheres in the statute, about how this is an inherently dangerous type of crime, how danger inheres in this. Some of the language they used, that when a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes lack of concern for safety of property and persons, of pedestrians and other drivers an inherent part of the offense. And when you combine that lack of concern for the safety of others, that's when we're getting into the reprehensible conduct that rises to the level of turpitudinous, especially when you consider it in conjunction with the high degree of scienter in this case which is the willful mens rea. Remember this, that when we're assessing whether an overall crime has the level of turpitudinous conduct, we're looking at a combination, it's a sliding scale. The higher the level of scienter, the less reprehensible the conduct has to be for the overall crime to be a crime involving moral turpitude. But even that kind of combination, you still need to cross a certain threshold. I mean, the categorical approach is hard enough when we do an element by element analysis. It's even harder when we're gonna play a game of degree and balancing two separate inputs to the degree and saying one may compensate for the other. It gets really tricky. But I mean, unfortunately though, the comparison for what constitutes something reprehensible like inherently base, vile or depraved contrary to the accepted rules of morality, there's a lot of other offenses I think you'd agree that get there much faster than this. And so then the real question kind of becomes is the CIMT reserved for kind of those more extreme instances or is it grabbing a lot of other stuff too? And it strikes me that if this combo of mens rea and danger kind of meet here, then the CIMT definition is gonna grab a lot of other stuff other than that kind of that most vile set of crimes that we all kind of think would might be the easy case for a categorical match. I mean, I think it's certainly fair to say that this case is close to the line. You're necessarily, when you're assessing what's gonna be, this isn't one of the easier cases like murder or something like that, because we could say it's definitively base, vile or depraved, but I do think it's base. I think this is where the Supreme Court's analysis is important because what they talk about in Sykes and this court talked about in Jones and some of the other cases talk about is the lack of concern for the safety of others when you engage in these types of vehicular flights. It's that lack of concern for the damage either to property or to persons and it's- And just to double back, cause I know Judge Jordan asked you to speak about prong three, but does that same lack of concern kind of come up even when we're in a crossing back to the crossing state lines? Can you still say that that's the same lack of concern if the person's doing it at 6 a.m. on a Sunday morning when there's no one else on the bridge? I think so because the crossing state line is not looked at in a vacuum. It's crossing a state line according to the terms of the statute while fleeing or attempting to elude a police officer. So we're not just looking at fleeing in a, excuse me, at crossing a state line in a vacuum. Crossing a state line in a vacuum, you're right. So you're fleeing at 6 a.m. on a Sunday morning when there is no one else on the road. And just imagine that they turn their lights on to pull you over when you're 10 yards from the state line. Well, from the view of the police officer, they may not know if there's a specific reason why the person would cross the state line or not. Maybe the person does it inadvertently. But the problem with engaging in that vehicular flight is that you run the risk of the danger. The fact that danger doesn't end up occurring in the categorical approach, we're not concerned with what actually happened. We're concerned with what's inherent in every version of it. But in the modified categorical approach, we are looking at what actually happened, right? Under modified, yes, certainly. And what I thought the premise that we were operating off of for purposes of the discussion we were in right now was, we thought this was a divisible statute. So we're in a modified categorical approach. Right, I'm sorry. I was operating under the presumption that we assumed that the aggravating factors are divisible and the felony provision is divisible from the misdemeanor-based provision. But I thought we were now looking at whether that's categorical, assuming that the record did not show what was there. Well, but you have to figure out where you are within those three, right? Well, under modified, yes. Yeah, and so is the government's position that having looked to understand where you are within those three, you then have to give yourself a sharp blow to the head and forget what you just read so that you know what happened? You're allowed to pay attention to that, aren't you? You're allowed to say, well, this was a, assume we thought that that page in the appendix was something we could look at. If we looked at it and we said, well, this is what happened. The guy was in a high-speed chase running away from the police, and he crashed into a car with some little kids in it. That's pretty serious bad stuff. Are we, or having known that we're in category three, do we then say, well, we can't, we just can't pay attention to that. Now we have to ask ourself, what's the very least culpable way you could be eluding the police in a high-speed chase where you put people in danger? Well, it's made a little bit difficult in this case because the agency didn't, the agency seemed to find that you could not tell from the Shepard documents which provision was at issue with respect to the second felony fleeing conviction. So they just assessed the entire thing under the categorical approach, which is why the government is making that argument. So I take your Honor's point. And all I can say is that if the court was going to deviate from what the agency did, it would have to find it back. Well, we think it could be sent back. That's, yes, that's what the government has argued. That is our argument that it should be sent back to apply the modified categorical approach, assuming the documents show that. I'm not entirely clear that the documents do that, but, well, I'll tell you what, this may be just a little bit out of order, but do you have the appendix with you? I do, 626, it's right here on the, I can point to it right here. So the, it's, you can, I don't know that you can necessarily tell which of the three is at issue. I think you can probably infer that crossing a state line wasn't one of them. And just judging from what I can see in the record, that's not any information. It certainly seems like this was- There's only two things he pled to. Right. He pled to fleeing and he pled to the accident. And there's only two things that correspond to that, count one and count four. And there's only one of those, count four, that talks about the accident. And that says, clear as a bell, at the intersection of East Franklin and Fulton Street and New Holland and Lancaster County, Pennsylvania, in the very same, on the same day, he was eluding police officers. You got now, unless you're trying to say, boy, I just don't know. I mean, maybe he was fleeing from police officers twice that day. And this is a completely different episode where he's running into a family in their car. We're not saying that, no. Then I'm not sure what it is about 626 that's causing you to be confused. Well, I don't know that it's necessarily confusion. It's just, I don't know that you can, the modified categorical approach requires certainty. And I don't know that this produces the 100% certainty that the courts have always looked to. If your honors are of a different view, then yes, you could look at that for the modified category. We're engaged with you on this, right? I'm taking positions to try to see how far your position goes. I'm arguing with you a little bit to try to get an understanding of what the government's prepared to get behind or not. On the one hand, I would have thought that the government would say, well, that's great, please remand it. Because if the IJ misses this, we should have another crack at it. That's what we did argue. Oh, okay. Because I just thought I was hearing you say, yeah, I'm not sure this goes there. But okay, well, I think we, Peter, all right. Well, we appreciate your argument, Mr. Robbins. We'll go ahead and we'll hear from Mr. Mahan on his rebuttal. Thank you very much for your time, Your Honors. Thank you, Your Honors. May it please the court. I'll be brief here because I did go over in my main argument section. But I just want to stress that under the modified categorical approach, we're not trying to figure out what happened in an offense. We're not making that assessment because we're so many degrees removed from the criminal case that it's inappropriate to attempt to do that. That is the point of the modified categorical approach, that we're still focused on elements of an offense. Right, so once we get into, assuming we got into one of those categories, one, two, or three, assuming the IJ were wrong and you could tell which one it was and you could see, oh, it is three. At that point, your position is, then you really do not pay attention to what you just read. What you do at that point is, you say, okay, now I gotta ask within that piece of the statute, what's the least culpable conduct? Is that right? Right, that is right. I think that is the standard, the express authorization standard that this court has endorsed, that we do engage. And this is Larios as well, a recent decision from this court that says for the modified categorical approach and the categorical approach, this court has not engaged in the realistic probability standard where the court would have had to address whether there was a particular case, an example of a case at issue where these factors were at play or where these considerations were at play. We have to look to the least culpable conduct. That's the standard that we're looking at. And the last thing I'll say, just with respect. Let me just interrupt you before you get off this topic. Sorry, but your opposing counsel talked a little about the good faith exception and if I traced his argument correctly, what he was saying is when we look at subsection three, so just assume that we're in this modified space, we're only looking at three, but then we look at it back from an elemental kind of fit perspective. I think what he's saying is we look at what could survive in three after we account for all those instances that would never ever meet three due to the good faith exception. And that seems to me to be the hardest part of your case of showing that three is a categorical match once we carve out all the racing to the hospital sort of scenarios. And so how is it that once those are out, absolutely nothing is left of a three conviction except something that is vile? Well, so I would say, I mean, there are multiple levels of divisibility that we're looking at. The felony and the misdemeanor at which your honors have taken the position it seems like and Ovando has that that is divisible, but even among the felony provisions themselves, the crossing the state line, the DUI offense and the endangerment offense, they have to be divisible for this court to find that it essentially matters which of those three aggravating factors was at play. And this again is Mathis and this enumeration of a unified aggravating factor element, a unified element. So I don't think you can carve them out is my point, your honor. I don't think you can, you can't split the statute in a way because the grading factors themselves at the second level of analysis are not divisible. The least culpable conduct under a unified aggravating factor analysis of the grading section is crossing the state line. So I just don't think this is a statute where we can carve out all turpitude and misconduct. I think it's too broad. Well, let me just ask it this way and it would go like this. Do you know who bears the burden of proof on the good faith exception? Because usually the categorical approach applies to elements of an offense, not elements of an affirmative defense. And so it's really looking at things that the government has the burden of proving that's what has to be the categorical match, not different statutes or limitations between state courts and federal courts and all of those other things are affirmative defenses. And so do you know who bears? I mean, an easy answer that would help your case I'm positing would be doesn't matter because the categorical approach only applies to elements that the government bears the burden of proof on and the good faith exception is something that my client bore the burden of proof on. And so strangely enough, if you didn't make that showing it doesn't harm him for categorical match purposes. And understand that, I'll just say as a final point that I think Moncrief answers this question and Moncrief stood for the position that we don't have to get into an analysis for the categorical or modified categorical approach of a burdens or how a case would hypothetically be prosecuted to determine, if there was an affirmative defense asserted who would bear the burden. We don't have to get into that analysis. We just have to look at how the elements are defined under the statute of conviction. That it's not a part of the categorical or modified categorical approach to engage in this hypothetical exercise of how a case could have been prosecuted if an affirmative defense was asserted. So I think Moncrief stands for that position. Just to wrap it up here, I'm gonna try to summarize. You tell me if I've understood you correctly. Your position is that if we thought this was a modified categorical approach case because Rosario Vondo says the same and we thought there's different punishments associated with the felony as opposed to the misdemeanor piece of this. Your position is still that once you cross that felony threshold, then those three subparts, the being intoxicated, crossing a state line, endangering the police or general public, that those things are means, not elements. And therefore, you can't slice at any finer than that. And then you have to look at what the least culpable is and that's the crossing state lines. Is that? That's exactly right. We're judging the statute and not the defendant. I'm sorry, Your Honor? We're judging the statute and not the defendant. That's exactly right. That's exactly well said. That's exactly how I wish I would have said it. That's perfect. So thank you. Thank you. Thanks very much for your arguments, Counselor. I appreciate it. We've got the matter under advice. Thank you.